UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

ENRIQUE BRITO,

                Movant,                                      OPINION AND ORDER

       -against-                                     16-cv-7618 (PKC)

UNITED STATES OF AMERICA,

                Respondent.

-----------------------------------------------------------x

UNITED STATES OF AMERICA,

                                                     11-cr-576 (PKC)

       -against-

ENRIQUE BRITO,

                Defendant.

-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Enrique Brito moves to vacate, set aside, or correct the sentence imposed upon him. 28 U.S.C. § 2255. He entered a plea of guilty to participating in a racketeering enterprise (Count One) and use of a firearm in furtherance of the crime of attempted murder (Count Twenty-Six). Brito discharged the firearm in an attempt to murder rival gang members but hit an innocent bystander. Brito was just under the age of 18 at the time of the shooting. He was sentenced by the late Judge Pauley to principally 270 months' imprisonment, consisting of 150 months on Count One and a consecutive term of 120 months on Count Twenty-Six. (ECF 457.)[1]

---

[1] All citations to the ECF docket are to the docket in 11-cr-576.

For reasons that will be explained, the Court concludes that the crime of attempted murder under New York law that is charged in Racketeering Act Five qualifies as a "crime of violence" under the modified categorical approach. The section 2255 motion will be denied.

The Court grants Brito's separate motion for a reduction in sentence for extraordinary and compelling reasons, 18 U.S.C. § 3582(c)(1)(A), and reduces his sentence from principally 270 months imprisonment to principally 202 months imprisonment.

The Section 2255 Motion

A person in federal custody may collaterally attack a final judgment in a criminal case based on "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (citation omitted). Review of a section 2255 motion "is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018) (quoting Graziano, 83 F.3d at 590). Brito urges that his conviction on Count One is premised on activity that does not qualify as a "crime of violence" under section 924(c).

Count One of the Indictment charged Brito with participation in a RICO enterprise, the Courtland Avenue Crew, and specifically Racketeering Act Five that charged him with attempting to murder and aiding and abetting the attempted murder of a member of a rival crew on July 7, 2011 that resulted in the non-fatal shooting of a bystander. (ECF 93, at 2). Racketeering Act Five insofar as it relates to the July 7, 2011 shooting expressly incorporates

New York Penal Law §§ 20.00 (criminal culpability for the conduct of another), 110.00 (attempt) and 125.25 (second degree murder). Count Twenty-Six is related to the same July 7 incident and charged Brito with use, carrying and discharging a handgun during and in relation to a crime of violence.

> As part of his plea allocution, Brito admitted the following:
>
> In 2008 to 2011 I was a member of a group known as God's Favorite Children. This group protected each other and at times sold drugs to support the group. In order to protect the group, I agreed with others to shoot our rival gang members with the intent to murder them. On July 2011 I attempted to murder rival gang members when I, along with other GFC members, fired a handgun at the Maria Lopez houses in the Bronx. As part of and in order to support the members of the group, I also agreed with others to sell crack cocaine in the Bronx. The group told more than 280 grams of crack together.
> THE COURT: Were you also involved in the marijuana?
> THE DEFENDANT: Yes.
> THE COURT: What kind of firearm did you possess?
> THE DEFENDANT: 9-millimeter.

(ECF 676, at 61-62.)

Brito's original pro se motion relied upon Johnson v. United States, 576 U.S. 591(2015), initially arguing that under 18 U.S.C. § 924(c)(3)(A) no "crime of violence" was charged and that the residual portion of the statute was void for vagueness. (ECF 595, 596.) Counsel, on his behalf, subsequently submitted a 39-page brief, focusing principally on an argument that Racketeering Act Five, an attempted murder, does not qualify as a "crime of violence." (ECF 676.) The parties have supplemented their briefing. (ECF 795, 801.)

Relying upon United States v. Taylor, 596 U.S. 845 (2022), Brito asserts that attempted murder is not a crime of violence within the meaning of 18 U.S.C. §924(c)(3)(A). The disposition of this motion is aided by the decision of the Second Circuit in United States v.

Pastore, 36 F.4th 423, 430 (2d Cir. 2022), opinion withdrawn and superseded on rehearing, 83 F.4th 113 (2d Cir. 2023) (Pastore II).

Utilizing the modified categorical approach, the Circuit considered whether the crime of attempted murder under New York law was a "crime of violence" within the meaning of section 924(c)(3)(A). In Pastore II, the predicate "crime of violence" was, as in the instant case, attempted murder under New York Penal Law §§ 20.00, 110.00 and 125.5. 83 F.4th at 120; ECF 93 at ¶11(b). The Court held as follows: "Because [defendant's] conviction for attempted murder in aid of racketeering under 18 U.S.C. § 1959(a)(5) is premised on the predicate crime of attempted murder under New York law, which constitutes a crime of violence as defined in the elements clause of section 924(c), we necessarily conclude that [defendant's] conviction for attempted murder in aid of racketeering under section 1959(a)(5) is a crime of violence."[2] 83 F.4th at 121-22.

Pastore II is controlling. Brito's conviction was premised upon a qualifying "crime of violence." It is not necessary to reach the government's alternative arguments for upholding the conviction.

In a letter dated December 1, 2023, in response to the Court's inquiry, counsel for Brito acknowledged that the Second Circuit decisions in Pastore II, United States v. Davis, 74 F.4th 50, 53–54 & n.22 (2d Cir. 2023), United States v. Morris, 61 F.4th 311, 317–20 (2d Cir. 2023) and Gomez v. United States, No. 21-2632, 2023 WL 8046326, at *7 (2d Cir. Nov. 21, 2023) control and when coupled with the procedural default rule foreclose his section 2255 challenge. (ECF 856.) Brito maintains that Pastore II and Davis were wrongly decided, and he

---

[2] Like Brito, the defendant in Pastore II had originally premised his argument on Johnson v. United States, 576 U.S. 591 (2015). Pastore II, 83 F.4th at 118 n.4.

thus stands on his challenge but does not dispute that this Court is bound by controlling precedent. The Court will deny Brito's section 2255 motion.

The Motion for Sentence Reduction

      A.  Exhaustion

Provided the exhaustion requirement is met, a court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Brito applied to the Warden of the facility for a sentencing reduction (ECF 760-7) and the request was denied (ECF 760-8). He filed his motion for a sentencing reduction more than 30 days after the denial. Thus, he has satisfied the statutory exhaustion requirement.

      B.  Standard For Granting a Reduction

      1.  Extraordinary and Compelling Reasons. Section 3582(c) explicitly prohibits a modification of a sentence unless one of the limited exceptions applies. Brito invokes the "extraordinary and compelling reasons" exception. 18 U.S.C. § 3582(c)(1)(a)(i). In reviewing a motion invoking this exception, the Court may consider all circumstances in combination or in isolation, except that rehabilitation alone, may not be the ground for a reduction. See United States v. Brooker, 976 F.3d 228, 237-38 (2d Cir. 2020).

A Policy Statement issued by the United States Sentencing Commission effective November 1, 2023 present helpful guidance to a Court considering a motion to reduce a sentence for extraordinary and compelling reasons. U.S.S.G. §1B1.13 (amended eff. Nov 1, 2023.) The Guideline address in some detail considerations relating to the "Medical Circumstances of the

Defendant," "Age of the Defendant," "Family Circumstances of the Defendant," "Victim of Abuse," "Unusually Long Sentence" and "Other Reasons."

The Policy Statement makes plain that the extraordinary and compelling reason "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." U.S.S.G. § 1.B1.13(e). The Policy Statement is silent whether a circumstance that was known and considered by the judge at the time of sentencing may qualify as an extraordinary and compelling reason for a sentence reduction. It would be a rare case that a mitigating circumstance expressly taken into account by the sentencing judge in arriving at, for example, a below-Guidelines sentence could after the passage of time amount to an extraordinary and compelling reason for a sentence reduction. One such rare case was before Judge McMahon who concluded that a reduction was warranted based upon an unusual set of facts known and considered at the time of sentencing, but which took on new significance upon further reflection. See United States v. Cromitie, No. 09 CR 558-01 (CM), 2024 WL 216540, at *6 (S.D.N.Y. Jan. 19, 2024) ("My misgivings about how the Government ensnared and then arranged things . . . factored significantly in my decision not to sentence them to more than the mandatory minimum.") In finding extraordinary and compelling circumstances, Judge McMahon invoked the "Other Reasons" exception under the Policy Statement.[3]

---

[3] "Other Reasons--The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." The circumstances described in the four paragraphs include "The death or incapacitation of the caregiver of the defendant's minor child. . . ." and "The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(A) & (C).

Brito focuses largely upon his youthful age, limited mental capacity at the time of the crime and extremely difficult upbringing. Brito was charged in a superseding Juvenile Information with a host of crimes including participating in a racketeering enterprise and possession and use of a firearm in furtherance of an attempted murder. Memorandum & Order of July 19, 2012. (ECF 134.) He was alleged to have sold crack and marijuana as part of the Cortland Avenue Crew ("CAC"). Brito was alleged also to be a member of a subgroup with an affiliation with CAC known as "God's Favorite Children" ("GFC"). GFC members had an ongoing rivalry with the Maria Lopez gang that erupted into violence. On July 7, 2011, Brito and another individual shot at a Maria Lopez gang member but wounded a bystander.

Brito joined GFC at age 13, associated himself with the criminal activity of CAC before his seventeenth birthday and shot a bystander in an attempt to murder a rival gang member shortly before his eighteenth birthday. Judge Pauley noted that "His father is missing, and his mother is a codefendant in this case. Thus, [Brito] has no biological family to return to. Given his track record, GFC is the only 'family' he would return to. As a result, rehabilitation is unlikely." (ECF 134 at 6.)

Judge Pauley also considered Brito's mental capacity. Dr. Sanford L. Drob, a clinical and forensic psychologist, concluded that Brito had an I.Q. of 74 with language deficiencies but not warranting a diagnosis of "Mental Retardation." (Id. at 10.) Dr. Drob opined that Brito had "Borderline Personality Tendencies, Depressive Affect and Self-Devaluation." (Id.) Judge Pauley concluded, among other things, that he had the capacity to conform his conduct to the law (id. at 11.) and granted the government's application to transfer Brito for prosecution as an adult pursuant to 18 U.S.C. § 5032.

Brito's plea allocution is quoted above. The PSR reflected that Victim-4 had fully recovered. (PSR ¶ 55.) At sentencing, Brito was also held responsible for distributing between 240 grams and 840 grams of crack cocaine. (Id. ¶ 68.) His criminal history reflected convictions for criminal possession of a firearm (.22 caliber handgun) (age 14), criminal possession of marijuana in the fifth degree (age 14), unlawful possession of marijuana (age 16) and criminal possession of a controlled substance in the seventh degree (age 17). (Id. at ¶¶ 84-91.) The PSR reported that since the age of 13, he had been prescribed Rispidol for ADHD and anger and clonidine for sleeping. (Id. ¶ 105). In 2009, he was diagnosed with bipolar disorder. (Id. ¶ 108.) At the time of sentencing, Brito had several disciplinary infractions while in pre-trial detention. (Id. ¶ 21.)

The PSR proposed a Guideline range on Count One of 168 to 210 months' imprisonment with a mandatory 120 months to run consecutively on Count Twenty-Six. (Id. ¶ 119-120). The Office of Probation recommended a sentence of principally 192 months (72 on Count One and the mandatory 120 months on Count Twenty-Six to run consecutively.)

At sentencing, Judge Pauley concluded that Probation had improperly excluded Brito's conviction at age 14 of possession of a weapon on the erroneous basis that it was part of the offense conduct. He therefore added two additional points to his criminal history score. (Sentencing Tr. 30.) He also found that Brito was on probation at the time of the instant offenses and therefore two additional points should be added. (Sentencing Tr. 31.) These revisions placed Brito in criminal history category IV (rather than III) with a Guidelines range of 188 to 235 months and a mandatory 120 consecutive months. (Id.). The Judge also rejected Probation's suggestion that he grant a downward departure pursuant to U.S.S.G. § 5H1.3 which is available if "mental and emotional conditions are present to an unusual degree and distinguish

the case from the typical cases covered by the guidelines." (Sentencing Tr. 31.) The Court concluded that Brito's "mental and emotional conditions are sad, but not extraordinary." (Sentencing Tr. 32.) He noted that his upbringing "was lawless and unsupervised, chaotic, and completely unstructured." (Sentencing Tr. 33.) Judge Pauley sentenced Brito to principally 150 months on Count One with a consecutive term of 120 months on Count Twenty-Six. (Sentencing Tr. 35.) The ultimate sentence of principally 270 months was 38 months below the advisory guidelines as the Judge found them. No appeal was taken by Brito.

Brito's counselled motion for a sentence reduction highlights many of the considerations that were in play at Brito's original sentencing. To quote the present motion: "Mr. Brito Suffers from Severe Mental Limitations and Psychological Issues," "Mr. Brito's Youth at the Time of the Offense Should Be Taken into Account," and "Mr. Brito's Difficult Upbringing Should Be Taken into Account." These reasons, among others that will be addressed, are considered to be the "extraordinary and compelling reasons" for a sentence reduction.

As Judge McMahon's decision in Cromitie indicates, the "Other Reasons" category in the November 1, 2023 Policy Statement may provide a basis for reassessing the propriety of an original sentence. Supreme Court and Second Circuit precedent since Brito's sentencing recognize that a juvenile has a different constitutional status at sentencing that requires an assessment of the special social, psychological, and biological factors attributable to youth. This, the Court concludes, is an extraordinary and compelling reason permitting the Court to consider a reduction of Brito's sentence.

In Miller v. Alabama, 567 U.S. 460, 465 (2012), the Supreme Court held that a mandatory life sentence for a crime committed as juvenile violated the Eighth Amendment.

Later, in Montgomery v. Louisiana, 577 U.S. 190 (2016) the Court held that before imposing a discretionary sentence of life without parole, a sentencing court is required to "to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." Montgomery, 577 U.S. at 209-10.

The Second Circuit later vacated and remanded for resentencing a non-mandatory life sentence imposed on an individual who had committed two murders as a juvenile because of the inadequacy of the sentencing judge's consideration of the defendant's age. United States v. Delgado, 971 F.3d 144, 159 (2d Cir. 2020). Brito's case presents neither a murder conviction nor a sentence of life imprisonment without the possibility of parole. Yet Delgado pointedly noted that Miller established that "children are constitutionally different from adults for purposes of sentencing." Id. at 149 (quoting Miller v. Alabama, 567 U.S. 460, 471 (2012)). "Miller requires the district court to undertake additional reflection on the special social, psychological, and biological factors attributable to youth." Delgado, 971 F.3d at 159. Indeed, in United States v. Brooker, 976 F.3d 228 (2d Cir. 2020), the Second Circuit explained that a defendant's age of seventeen years at the time of his offense "might perhaps weigh in favor of a sentence reduction" under 18 U.S.C. § 3582(c)(1)(A)(i) and was a circumstance "Congress seemingly contemplated that courts might consider . . . when it passed the original compassionate release statute in 1984." Id. at 238.

The Court finds that Brito's age of 17 years and eleven months at the time of the shooting, his horrific upbringing, his low I.Q. of 74, his mental illness and the "additional reflection" now required of a judge sentencing a person whose crimes were committed while a

juvenile in combination amount to extraordinary and compelling reasons warranting for a reduction under § 3582(c)(1)(A).[4]

        2.        <u>Section 3553(a) Factors.</u>  If a Court finds the existence of extraordinary and compelling reasons for a reduction, the inquiry does not end. "[E]xtraordinary and compelling reasons are necessary – but not sufficient – for a defendant to obtain relief under § 3582(c)(1)(A)" because "a district court must also consider 'the factors set forth in section 3553(a)' before granting relief." <u>United States v. Jones</u>, 17 F.4th 371, 374 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). An application is properly denied if the section 3553(a) factors weigh against the application. 18 U.S.C. § 3553(a). <u>See</u> <u>Jones</u>, 17 F.4th at 374-75; <u>see also</u> <u>United States v. Davis</u>, No. 22-3061-CR, 2024 WL 371121, at *2 (2d Cir. Feb. 1, 2024) ("Where the 18 U.S.C. § 3553(a) sentencing factors do not support modification of the sentence, a district court may not grant a compassionate release motion."); <u>United States v. Keitt</u>, 21 F.4th 67, 69 (2d Cir. 2021) ("[W]hen a district court denies a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not also determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.").

        The Court has considered each of the factors set forth in section 3553(a) and need not recount all that it has considered. Here, the nature and circumstances of the crime loom large in the analysis. Brito was a member of a racketeering enterprise operating principally in the Bronx, the CAC, that engaged in murder, violence, and drug distribution. Brito conspired to murder members of a rival gang the Maria Lopez Crew and in fact attempted to murder a

---

[4] The Court rejects Brito's attempt to show that his sentence was excessive (or "Unusually Long" in the words of the Policy Statement) by reference to generalized sentencing statistics. He received a sentence 38 months below the advisory guidelines. Nor was there an unwarranted sentence disparity. Brito's cites to the sentencing of co-defendants in the case but no disparity in sentencing has been shown to be unwarranted on the facts presented.

member of that Crew with a handgun but inadvertently hit a bystander. The fact that the victim fully recovered is of marginal import to the seriousness of the crime of attempted murder. Brito was age 17 and elven months at the time of the shooting. At sentencing, he was also held responsible for the distribution of between 280 and 840 grams of crack cocaine.

Brito, at age 31, presents himself as a different person than the 19-year-old who stood before Judge Pauley for sentencing. At sentencing, Judge Pauley concluded that he had "not demonstrated yet a desire to change his ways and to try to move on toward a life as a productive citizen" but had "made up his mind to spend a long long time in jail." (Sentencing Tr. at 32-33.) Brito now states "I'm proud to say I'm not the same person that was in front of [Judge Pauley] 8 years ago. . . . I wish I could change the past. But I can't. All I can do now is learn from my past and apply it to my life in a positive way." (ECF 760-1.) He has obtained a GED while incarcerated and participated in a number of programs to address his drug use and dependency. He has not been charged with infractions or violations in recent years.

The history and characteristics of this defendant are different than they were on the date of sentencing because of his greater insight into his criminal behavior and his efforts to prepare for a future outside of prison. The need to protect the public from further crimes of this defendant has somewhat dissipated from his age, maturity, education and plans for the future. The need to impose just punishment and deter others from committing similar crimes tilts against a sentence reduction. On balance, the Court concludes that the section 3553(a) factors tip in favor of a sentence reduction.

The stated or nominal length of his term of imprisonment is 270 months. Measured from the time of original remand (September 28, 2011)[5] to the date of projected

---

[5] PSR at p.2.

release (April 28, 2031)[6] his effective term of imprisonment is 235 months (or 19 years, 7 months). He has served about 64% of that sentence. A balancing of the section 3553(a) factors does not warrant a release to time served (about 150 months' imprisonment), as requested by Brito. But the finding of extraordinary and compelling reasons and the balance of section 3553(a) factors warrants a reduction of the sentence of the stated term of imprisonment of 270 months to a term of 202 months imprisonment.

CONCLUSION

Upon the finding that extraordinary and compelling reasons exist for a sentence reduction and considering the section 3553(a) factors, the Court concludes that a reduction in Brito's original term of imprisonment from 270 months imprisonment to 202 months imprisonment is warranted and hereby GRANTED. All other terms and conditions of the original judgment, including the term of 4 years supervised release, remain in place.

The Clerk is requested to terminate the motions in 11-cr-576 at ECF 595 and close 16-cv-7618.

SO ORDERED.

_P. Kevin Castel_
P. Kevin Castel
United States District Judge

Dated: New York, New York
April 12, 2024

---

[6] https://www.bop.gov/mobile/find_inmate/byname.jsp (last accessed April 10, 2024.)